No. 19,530.

THE STATE OF KANSAS, *Appellant*, v. J. E. WIGLES-WORTH, *Appellee.*

SYLLABUS BY THE COURT.

CRIMES—*Sale of Diseased Animals—Statute Applies to Living Animals Only.* The "act prohibiting the sale or purchase of diseased animals for food, and providing penalties for the violation thereof" (Laws 1909, ch. 185, Gen. Stat. 1909, §§ 3092-3094), applies to living brutes and not to carcasses or to the flesh of animals that have been slaughtered.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed December 12, 1914. Affirmed.

*John S. Dawson,* attorney-general, and *James M. Meek,* county attorney, for the appellant.

*Junius W. Jenkins,* of Kansas City, and *Noyes & Heath,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In a prosecution begun on December 20, 1913, an information was filed charging that the appellee, J. E. Wiglesworth, "unlawfully, willfully and knowingly did expose for sale, offer for sale, sell, and cause to be exposed for sale, offered for sale and sold, carcasses of diseased hogs, or carcasses of hogs infected

with dangerous diseases, to wit, hog cholera, to be used for human consumption, he, the said J. E. Wiglesworth, then and there well knowing said carcasses of hogs to be so diseased, contrary to the statute in such case made and provided."

The information contained five counts, charging the commission of the same kind of offense on five different dates in September, 1913. The appellee moved to quash the information on the ground that it failed to charge a public offense, and the motion being sustained the state appeals from the ruling.

An attempt was made by the prosecution to charge a violation of chapter 185 of the Laws of 1909 (Gen. Stat. 1909, §§ 3092-3094), but the trial court held that the statute contemplates the prohibition and punishment of the sale and disposition of diseased living animals, and not the sale and disposition of carcasses or of the sale and disposition of the meat obtained from diseased animals, and upon that theory it was decided that the information did not state a public offense. The first section of the act, and the one under which the prosecution was begun, provides:

"Any person or persons who shall kill, sell or trade or exchange, or offer to sell, trade or exchange, for human consumption, any diseased animal or animals, knowing them to be diseased, shall be guilty of a misdemeanor; provided, that this act shall not apply to animals sold for immediate slaughter under state or federal inspection." (Gen. Stat. 1909, § 3092.)

Another section of the act provides, substantially, that if persons come into the possession of diseased animals by purchase, trade or exchange, or in any other way, for the purpose of disposing of them for food, knowing them to be diseased, they shall be guilty of a misdemeanor, unless the animals have been obtained for immediate slaughter under state or federal inspection. (Gen. Stat. 1909, § 3093.) The third section of the act prescribes the penalty, which may be fine or imprisonment, or both. (Gen. Stat. 1909, § 3094.)

If the words of the act are to be given their natural and ordinary meaning it must be concluded that the legislature was striking at the practice of dealing in and disposing of diseased animals rather than that of dealing in and disposing of flesh or meat that is unfit for human consumption. Living animals and not carcasses constituted the subject matter that was in the mind of the legislature in enacting the statue. The term animal, in is widest sense, means a living being, but, as commonly used, it means a living brute or beast. In any sense it implies an animate being, a living creature, and is ordinarily not applied to things without life. That the legislature was treating of living brutes and not carcasses is indicated by the fact that the thing or creature to which it referred was one that was subject to disease, and also one that may be slaughtered or killed. The proviso of the section shows clearly that the animals spoken of in the act are living creatures and intended for slaughter, as it excepts such animals as are sold for immediate slaughter under government inspection. It is true, as appellant contends, that the act was designed to promote the public health and indirectly to protect the public as against unwholesome food. The legislature, however, did not undertake to provide for all phases of health and pure food in this short act, but chose to deal only with the disposition of diseased animals and thereby extend such protection as such a measure would afford. Those who kill, as well as those who sell, are amenable under the law, and in the brief appellant states that appellee, in carrying on his business, has, in fact, killed diseased animals, but the charge contained in the information herein goes no farther than to charge that he is selling and causing to be offered and exposed for sale the carcasses of hogs infected with hog cholera. This, as we have seen, is not a violation of the statute in question.

The judgment of the district court will be affirmed.